IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GREGORY H. BROOKS,

        Plaintiff,               No. 2:12-cv-2536 AC P

     vs.

SCOTT PERKINS, et al.

        Defendants.        <u>ORDER</u>

_____/

        Plaintiff is a state prisoner proceeding pro se and in forma pauperis on his complaint seeking damages and injunctive relief pursuant to 42 U.S.C. § 1983.  Plaintiff has consented to the jurisdiction of the undersigned.  <u>See</u> ECF No. 5.

        On February 15, 2013, the court screened plaintiff's complaint, and dismissed it with leave to amend.  <u>See</u> ECF No. 8.  In particular, the court found that plaintiff's claims against the California Department of Corrections and Rehabilitation ("CDCR") and Prison Industry Authority ("CAL PIA") were barred by the Eleventh Amendment.  <u>See</u> <u>id.</u> at 4.  The court further found that there was no indication that plaintiff had exhausted his administrative remedies.  <u>Id.</u> The court specifically advised plaintiff that, if he chose to amend the complaint, he "must demonstrate how the conditions complained of have resulted in a deprivation of plaintiff's constitutional rights."   <u>See</u> ECF No. 8 at 4.

1    Plaintiff has now filed an amended complaint.  ECF No. 11.  The amended

2  complaint not cure the deficiencies raised in the court's February 15, 2013 order.  Accordingly,

3  the court will dismiss the action for failure to state a claim upon which relief can be granted,

4  pursuant to 28 U.S.C. § 1915A(1)(b)(1).

5                    *Summary of the Amended Complaint*

6    Plaintiff alleges that defendants Scott Perkins, Eric Reslock, and Tim Hart, all

7  apparent employees of CAL PIA, were negligent in manufacturing and distributing "Bar and

8  Bitz" brand soap because the soap contained a carcinogen in violation of state law, and the Fifth,

9  Sixth, Eighth, and Fourteenth Amendments of the Constitution.  ECF No. 14 at 1.

10    Plaintiff alleges that PIA soap "was discovered to possess an ingredient called

11  (CARCINOGEN) which is a cancer forming agent."  Id. at 3.  Specifically, Plaintiff claims that

12  the soap contains a substance called "ESTROGLE [sic] which is a compnant [sic] that violates

13  California Prop 65."  ECF No. 11 at 2; 16.[1]

14    On July 29, 2012, PIA issued a memorandum recalling the soap.  Id.  Plaintiff

15  appears to allege that defendants knew that the soap was toxic before July 29, 2012.  Id. at 4.

16  Specifically, plaintiff claims that defendant Tim Hart told non-party Mario Williams that

17  CALPIA tested the soap for toxic substances in 2007; that CALPIA did not care about Mr.

18  Williams, and that CALPIA is trying to kill Mr. Williams.  Id. at 2.

19    Notably plaintiff does not allege that he himself ever used the soap, or was

20  otherwise exposed to the alleged carcinogen.  However, plaintiff claims that "the damage has

21  been done," but that any "medical issues won't arrive for years to come."  Id. at 4.  Plaintiff

22  claims that he "has suffered symptoms of Frequent Urination, Nightime [sic] Urination, Bone

23  aches, headaches and changing of the skin which is consistent with symptoms placing Plaintiff

24  'at risk' for Bladder, Lung, Neorologic [sic] and Muscular Cancer. . . ."  Id. at 5.  Plaintiff

25  _____

26    [1] According to the material data sheet provided by plaintiff, the carcinogen listed appears to be estragole.

1   attaches a bare list of medications which were apparently prescribed to him; however, he

2   provides no information about why these medications were prescribed.  ECF No. 11 at 20-21.

3   He accordingly seeks: (1) monetary damages of $1 million; (2) punitive damages of $10 million

4   "for the mental anguish suffered due to the slow and agonizing MURDER of my existence as the

5   Cancer eats away may [sic] Tissues, and organs," (3) compassionate release; and (4) payment for

6   treatment and care.  Id. at 6.

7           Attached to the Amended Complaint are several exhibits.  Exhibit A is a

8   Memorandum dated July 29, 2012 from the Warden at California State Prison-Solano which

9   reads that "[d]uring CAPLIA's annual review of product Material Safety Data Sheets a trace

10  amount of chemical that is listed for review under the Safe Drinking Water and Toxic

11  Enforcement Act of 1986 (Proposition 65) as a carcinogen was found to be present in CALPIA's

12  bar soaps."  ECF No. 11 at 7.

13          Exhibit B is an "Updated CAPILA Customer Alert: Bar Soap Products" dated

14  July 30, 2012 from CALPIA which reads that

15              [d]uring an annual inspection, a trace amount of a chemical listed
                as a carcinogen under Proposition 65 was found to be present in
16              the soap's fragrance.

17              This chemical is a natural organic compound that is listed as a
                third tier priority for the State of California to study.  It may be 3-5
18              years before the State issues guidelines with respect to maximum
                exposure levels.  This product is not hazardous by OSHA criteria
19              and does not contain any carcinogens or potential carcinogens as
                listed by ACGIH, IARC, OSHA, or NTP.
20
                In the absence of guidance under Proposition 65, CALPIA
21              discontinued using the chemical in this product and recommends
                that unused products already purchased be returned to CALPIA.
22

23  ECF No. 11 at 9.

24          Exhibit C is a "Material Safety Data Sheet" for Barz & Bitz Bar Soap prepared

25  July 30, 2012 for soaps produced prior to July 28, 2012.  At Section 2, entitled "Hazards

26  Identification," the sheet reads: "EMERGENCY OVERVIEW CAUTION MAY IRRITATE

EYES AND SKIN."  At Section 11, entitled "Toxicological Information," the sheet reads that
the chronic effects of exposure are: "Prolonged or repeated contact may dry skin and cause
irritation."   The data sheet additionally reads that the effects of acute exposure are:

> Inhalation: May cause respiratory tract irritation. Signs/symptoms
> may include cough, sneezing, nasal discharge, headache,
> hoarseness, and nose and throat pain.
>
> Eye: May be irritating to eyes.  Signs/symptoms may include
> redness, swelling, pain, tearing, and blurred or hazy vision.
>
> Skin: May be irritating to skin with prolonged contact.
> Signs/symptoms may include localized redness, swelling, and
> itching.
>
> Ingestion: May cause gastrointestinal irritation.  Signs/symptoms
> may include abdominal pain, stomach upset, nausea, vomiting and
> diarrhea.

ECF No. 11 at 14.

The data sheet further reads that the carcinogenicity of chronic exposure is: "Not
hazardous by OSHA criteria.  This product does not contain any carcinogens or potential
carcinogens as listed by ACGIH, IARC, OSHA, or NTP."  Id.

*Plaintiff Fails to State a Claim*

Plaintiff seeks money damages, as well as release from custody, because a brand
of soap containing estragole has been recalled by its manufacturer.  Plaintiff appears to claim
that, based on the State of California's identification of one of the soap's trace ingredients as a
carcinogen, plaintiff is at risk for bladder, lung, brain, and muscular cancer.

Plaintiff, however, does not allege that he ever used the soap, or was exposed to
it.  Even assuming plaintiff did use the soap, he does not appear to have cancer, and has not yet
suffered any injury as a result of his use of the allegedly hazardous soap.  Moreover, plaintiff
fails to account for the actual risks listed on the soap's data sheet, which does not identify any
kind of cancer as a hazard of use.

At the very least, plaintiff's allegations are speculative; at worst, they are

1    frivolous.  In either case, they fails to state a claim upon which relief may be granted, and the

2    court will accordingly exercise its discretion under 28 U.S.C. § 1915A to dismiss it.

3            Generally, the Eighth Amendment protects prisoners from inhumane methods of

4    punishment and from inhumane conditions of confinement.  Morgan v. Morgensen, 465 F.3d

5    1041, 1045 (9th Cir. 2006).  Extreme deprivations are required to make out a conditions of

6    confinement claim, and only those deprivations denying the minimal civilized measure of life's

7    necessities are sufficiently grave to form the basis of an Eighth Amendment claim.  Hudson v.

8    McMilliam, 503 U.S. 1, 9 (1992) (citations and quotations omitted).  In order to state a claim for

9    a violation of the Eighth Amendment, a plaintiff must allege facts sufficient to support a claim

10   that prison officials knew of and disregarded a substantial risk of serious harm to the plaintiff.

11   Farmer v. Brennan, 511 U.S. 825, 847 (1994).

12           A prisoner may state a cause of action under the Eighth Amendment by alleging

13   that prison officials have, with deliberate indifference, exposed him to environmental conditions

14   that pose an unreasonable risk of serious damage to his future health.  See Helling v. McKinney,

15   509 U.S. 25, 35 (1993).

16           For example, in Helling, the United States Supreme Court found that a Nevada

17   prisoner states a cause of action under the Eighth Amendment by alleging that prison officials

18   exposed the prisoner to levels of second-hand tobacco smoke that posed an unreasonable risk of

19   serious damage to the prisoner's future health where, among other things, the prisoner was

20   housed with a cellmate who smoked five packs of cigarettes a day.  509 U.S. at 35.

21           The Supreme Court specifically noted, however, that on remand the prisoner

22   would have to show that he himself was being exposed to "unreasonably high levels" of tobacco

23   smoke, and that the district court would have "to assess whether society considers the risk that

24   the prisoner complains of to be so grave that it violates contemporary standards of decency to

25   expose *anyone* unwillingly to such a risk.  In other words, the prisoner must show that the risk of

26   which he complains is not one that today's society chooses to tolerate."  Id. at 36.

1    On the other hand, courts in this district have repeatedly found that confinement

2    in a location where Valley Fever is prevalent, in and of itself, fails to satisfy the first element of

3    an Eighth Amendment claim, i.e., that the condition poses an "excessive risk of harm."  See, e.g.,

4    Sparkman v. California Dept. Of Corrections and Rehabilitation, 2012 WL 6004522 *3 (E.D.

5    Cal. Nov. 30, 2012), citing Smith v. Yates, 2012 WL 1498891, *2 (E.D. Cal. Apr. 27, 2012)

6    (citing King v. Avenal State Prison, 2009 WL 546212, *4 (E.D. Cal. Mar. 4, 2009) ("[T]o the

7    extent that Plaintiff is attempting to pursue an Eighth Amendment claim for the mere fact that he

8    was confined in a location where Valley Fever spores existed which caused him to contract

9    Valley Fever, he is advised that no courts have held that exposure to Valley Fever spores

10   presents an excessive risk to inmate health."); see also Johnson v. Pleasant Valley State Prison,

11   2012 WL 1297380, *3 (E.D. Cal. Apr. 16, 2012) ("Even if the risk of contracting Valley Fever is

12   higher at PVSP than in other areas of the state, the Court declines to find that, due to its location,

13   the prison itself constitutes a substantial risk of harm to inmates."); Gilbert v. Yates, 2010 WL

14   5113116, *3 (E.D. Cal. Dec. 9, 2010); Willis v. Yates, 2009 WL 3486674, *3 (E.D. Cal. Oct. 23,

15   2009).

16   The court finds, construing plaintiff's allegations in the light most favorable to

17   him, that plaintiff has failed to describe a condition that, in and of itself, poses an unreasonable

18   risk of serious damage to plaintiff's future health.  Instead, according to the material safety data

19   sheets supplied by plaintiff, the greatest harm presented is irritation to the respiratory tract, eyes,

20   skin, or intestines.[2]  Such potential for irritation does not support a conclusion that exposure to

21   the soap creates a risk that is unacceptable to modern society.

22   In addition, even if the estragole posed an excessive risk of "serious damage to

23   plaintiff's future health," the record reflects that defendants did nothing which could be

24   considered "deliberately indifferent."  Instead, the evidence shows that the defendants ceased

25   

26       [2]  The data sheets for the soap do not attribute the listed harms to the presence of the
estragole; however, the court will draw this inference in plaintiff's favor.

6

1    production of the soap, and recalled existing stock, after an annual review of product material

2    safety data sheets revealed that the soap included an ingredient named as a carcinogen by the

3    state (ECF No. 14 at 8, 10).[3]   In other words, plaintiff's complaint shows that defendants did not

4    ignore a possible threat to safety, but instead acted to remove the soap from use.

5              *Conclusion*

6              Plaintiff's amended complaint will be dismissed for failure to state a claim upon

7    which relief can be granted.  28 U.S.C. § 1915A.  While pro se litigants are generally entitled to

8    notice of a complaint's deficiencies and an opportunity to amend prior to dismissal, a complaint

9    may properly be dismissed without leave to amend where any amendment would be futile.  In

10   this case, plaintiff was specifically directed in the court's prior orders to explain how the actions

11   of the defendants violated plaintiff's constitutional rights, and, to date, plaintiff has been unable

12   to do so.

13             Accordingly, IT IS HEREBY ORDERED that the amended complaint (ECF No.

14   11) is dismissed for the reasons discussed above, without leave to amend, for failure to state a

15   claim upon which relief may be granted.  28 U.S.C. § 1915A(1)(b)(1).

16   DATED: April 18, 2013.

17

18                                          _____
                                            ALLISON CLAIRE

19                                          UNITED STATES MAGISTRATE JUDGE

20   AC:rb/broo2536.b(2)

21

22   _____

23       [3]  While plaintiff alleges that "Defendant did not give clear and reasonable warning of
     Toxic product, in fact they have known about it for the past four years. [sic] which denies due
     process," this allegation is not supported by any fair reading of the Williams affidavit or the

24   other exhibits.  Instead, the hearsay testimony of Mario Williams, who is not a party to this
     lawsuit but who is apparently seeking damages from the defendants on account of the soap

25   recall, reads that  defendants tested the soap for toxic chemicals in 2007.  ECF No. 11 at 18.  The
     testimony gives no indication of what chemicals defendants tested for, whether any toxic

26   chemicals were found, or whether estragole was among those tested for in 2007.